Robert Edward SNYDER and Allison Golias, Appellants,

v.

HELENA LABORATORIES, INC., Appellee.

No. 09–93–055 CV.

Court of Appeals of Texas, Beaumont.

May 26, 1994.

Rehearing Overruled June 16, 1994.

John F. Nichols, Houston, Richard J. Clarkson, Reaud, Morgan & Quinn, Beaumont, for appellant.

Bruce M. Partain, S.L. Greenberg, Wells, Peyton, Beard, Greenberg, Hunt & Crawford, Beaumont, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BURGESS, Justice.

This is a summary judgment case involving the torts of negligent interference with familial relationships and alienation of affections.

Allison N. Golias [Allison] was married to Joseph Hilton Golias [Joe], a vice-president of Helena Laboratories Corporation [Helena]. Robert Edward Snyder [Robert] was married to Pamela McKinley, then Pamela Snyder [Pam], an executive secretary for Helena. Joe and Pam had an affair. Both marriages ended in divorce. Allison and Robert sued Helena for negligent interference with familial relations. Allison also sued Joe, alleging various theories of intentional tort and negligence; this part of the suit has been severed from the suit against Helena.

Helena submitted the following grounds in support of its summary judgment motion:

(1) The acts of Joe and Pam were not in the course and scope of their employment nor authorized or ratified by Helena. Helena derived no benefit from the conduct of Joe and Pam.

(2) Helena breached no duty owed to Allison and Robert because Helena obtained no information from which it knew or should have known of the relationship between Joe and Pam.

(3) Under various alleged theories, Plaintiffs are basically bringing a cause of action for alienation of affection, and, therefore, said cause is barred by Family Code § 4.06 (Vernon 1975) [sic].

■ Since the order of the trial court does not state the specific grounds on which it was granted, appellants must show that each independent argument alleged in Helena's motion for summary judgment is insufficient to support the trial court's order. *McCrea v. Cubilla Condominium Corp.,* 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Southerland v. Northeast Datsun, Inc.,* 659 S.W.2d 889, 891 (Tex. App.—El Paso 1983, no writ).

Appellants' points of error are as follows:

Point of error one:

"The trial court erred in granting the summary judgment."

Point of error two:

The movant was not entitled to summary judgment because:

(1) The claims of Robert and Allison are not barred as a matter of law by TEX. FAM.CODE § 4.06;

(2) The following fact issues, which must be submitted to the jury, remain in the case:

(a) whether Helena ratified the illicit conduct of Joe and Pam;

(b) Helena's negligent performance of its duties to Robert and Allison imposed by *Kelsey–Seybold Clinic v. Maclay* [1] by its vice principals;

(c) Helena's conduct as intentional, extreme and outrageous;

1. 466 S.W.2d 716 (Tex.1971).

(d) Helena's breach of duty resulting in negligent infliction of emotional distress;

(e) Helena's special relationship with Robert and Allison's putting it in a fiduciary capacity;

(3) The motion for summary judgment was used to circumvent the special exception practice. Helena challenged the sufficiency of the pleadings by summary judgment instead of by special exceptions, as required by the rules;

(4) Helena did not provide evidence in its summary judgment evidence by Tipton that all officers and directors of Helena did not know of the conduct between its vice-president, Joe, and its executive secretary, Pam;

(5) Helena did not raise an affirmative defense in its answer that Helena did not ratify the conduct of its vice-president, Joe, or its executive secretary, Pam.

■ Helena alleges that Allison's and Robert's positions are merely an attempt to skirt the Texas statutory prohibition against suits for alienation of affection.[2] Effective September 1, 1987, the Texas Legislature abolished the cause of action once known as alienation of affection. TEX.FAM.CODE ANN. § 4.06 (Vernon 1993). It is appellants' position that section 4.06 only bars a right of action for the "intentional" tort of alienation of affection by one spouse against a third party. Appellants contend that they have not sued Helena for alienation, saying that their suit is distinguishable in that appellants seek to hold Helena responsible for "negligent interference with family relations." Appellants contend that a cause of action for alienation of affection is an intentional tort, arising out of the impairment of consortium between the spouses of a marriage, whereas the cause of action for interference with family relations alleged against Helena is a tort

for negligence and that Helena had a duty to use reasonable means at its disposal to prevent any partner, vice principal or employee from improperly using his position with Helena to work a tortious invasion of legally protected family interests. In support of their position appellants cite *Kelsey–Seybold Clinic v. Maclay*, 466 S.W.2d 716, 720 (Tex. 1971), and *Turner v. PV International Corp.*, 765 S.W.2d 455, 467 (Tex.App.—Dallas 1988), *writ denied per curiam*, 778 S.W.2d 865 (Tex.1989).

■ Apparently *Kelsey–Seybold Clinic* does recognize a distinction between the two causes of action, when the supreme court declares: "... the Clinic owed a duty to the families of its patients to exercise ordinary care to prevent a tortious interference with family relations." *Id.* at 720. Consequently, there is such a cause of action. Appellees argue that *Kelsey–Seybold* is limited (1) to the doctor/patient context or (2) to the partnership organization. We do not find such a limitation. *See also Transportation Ins. Co. v. Archer*, 832 S.W.2d 403, 405 (Tex.App.—Fort Worth 1992, writ denied) (no right of recovery for damages for interference with familial relationships as between husband and wife that does not rise to the level of loss of consortium).

As in *Kelsey–Seybold*, there are numerous fact questions in this case. Some of those are:

a. What acts were Joe Golias and Pam Snyder committing on corporate property and corporate time?

b. What did Tipton or Ann Golias[3] know about the relationship and when did they know it?

c. What did Tipton or Ann Golias do about the relationship, if anything?

---

2. Appellees question the role of government (the courts) in intruding into the workplace. However, the workplace should be just that, a place where employees perform the usual duties of their jobs. Spouses should be secure in the knowledge that employers will not condone the type activity involved in this case between its employees. Spouses should be secure in the knowledge that when employers discover those type of activities are happening on their premises or during working hours, those employers will

take reasonable steps, within their means, to prevent a tortious invasion of the family interest. Spouses should be secure in the knowledge that when employers breach this duty, courts will provide a remedy.

3. Tipton and Ann Golias are Joe's parents. They are both vice principals of Helena. Tipton is the corporation's president and chairman of the board.

d. What should have Tipton or Ann Golias done about the relationship, if anything?

Since there are issues of material fact to be determined, summary judgment was improper. The case is reversed and remanded for a new trial.

REVERSED AND REMANDED.

WALKER, Chief Justice, dissenting.

This appeal comes from the 136th Judicial District Court, Jefferson County, Texas, Jack R. King, Judge presiding. On January 12, 1993, the trial court entered a summary judgment in favor of Helena Laboratories Corporation, appellee herein, against Robert Edward Snyder and Allison N. Golias, appellants herein.

The order portion of this summary judgment as follows:

ORDERED that Defendant Helena Laboratories Corporation's Motion for Summary Judgment is hereby GRANTED, and said Defendant shall have no liability to the respective Plaintiffs for any of the causes of action asserted against Helena in Plaintiff Robert Snyder's First Amended Original Petition or Plaintiff Allison N. Golias' First Amended Original Petition. Defendant Helena Laboratories Corporation is discharged from any liability to the Plaintiffs, and Plaintiffs, Robert Snyder and Allison N. Golias shall take nothing from Defendant Helena Laboratories Corporation by reason of this suit.

It is from the entry of this summary judgment which appellants appeal.

Factually, Joseph Golias is a vice-president of Helena Laboratories Corporation, which has its home office in Beaumont, Jefferson County, Texas. Pamela McKinley, formerly Pamela Snyder is employed as an executive secretary at Helena. Pamela McKinley is the ex-wife of appellant Robert Edward Snyder. Joseph Hilton Golias was married to Allison N. Golias such marital relationship having been terminated by divorce. According to Joseph's father, Tipton Golias, Joseph, as a vice-president of Helena, was being groomed to eventually run Helena.

According to the record, the marital problems between Joseph and Allison began sev-

eral years before their final separation in March of 1991. In the latter part of March of 1991, Joseph and Allison began living apart in contemplation of divorce. Joseph Golias testified that "probably a week and a half or two weeks after Allison and I separated," an intimate relationship developed between Joseph and Pamela. According to the record, this intimate relationship evolved into one of a sexual nature. The liaisons between Joseph and Pamela occurred primarily at the home of Alan Cramer, a friend to Joseph Golias.

At the time of these events, a private investigator was hired for purposes of investigating the relationship between Joseph and Pamela. The information obtained from the hired investigator, was not shared with Helena Laboratory Corporation. Suffice it to say that no one ever complained to Helena Laboratory Corporation regarding the relationship between Joseph and Pamela. Robert Snyder obtained knowledge of the affair between Joseph and Pamela on or about June 1, 1991 through a conversation with one Sherry Henderson, not an employee of Helena. The record is void of any evidence showing that Robert or Allison ever requested Helena take action regarding the relationship between Joseph and Pamela.

However appellants determine to structure their respective complaints, at the very heart of these complaints is the fact that appellants are seeking redress against Helena for the break-up of their respective marriages by attempting to place responsibility upon Helena. The thrust of appellants' complaints are efforts to impose a duty upon Helena Laboratories Corporation to police the private lives of its officers and employees; to make and impose its moral judgment regarding employees' conduct; and to, in some way, insure that family interests are not violated.

I view appellants' complaint as an ingenious attempt at circumventing Section 4.06 of the Texas Family Code Ann. (Vernon 1993), which provides:

A right of action by one spouse against a third party for alienation of affection is not authorized in this State.

Here, I choose to take our lawmakers' words literally. The words "a right of action ... is not authorized in this State," means any right of action wherein the basic or underlying thrust of such action is to recover against a third party (any third party) for acts of omission or commission, which had, or may have had, as a foreseeable consequence, the interrupting, interference with, or ultimate termination of spousal relations. I further believe that had our State Legislature intended to carve out exceptions to § 4.06, they would have done so.

Appellant seeks support via *Kelsey–Seybold Clinic v. Maclay,* 466 S.W.2d 716, 720 (Tex.1971). For approximately twenty-three years *Kelsey–Seybold* has free-floated the legal cosmos of Texas law. I believe that § 4.06 has effectively triggered reentry of that legal vehicle whereby the remaining recognizable parts apply only to actions brought prior to September 1, 1987. Interesting is appellants' reliance upon *Kelsey–Seybold,* a case wherein paramount concern was the actual notice conveyed to the clinic regarding the doctor's intimate conduct with a female patient of the clinic. In our case, notice was actually covertly obtained, then secreted from, Helena Laboratories Corporation.

Prior to the enactment of § 4.06 of the Texas Family Code, Texas provided legal remedy and recourse against third parties responsible for marital interference or marital break-up. Such action is no longer viable in this State. If, since the enactment of § 4.06, appellants' present actions for negligent interference with family relations, intentional infliction of emotional distress, and negligent infliction of emotional distress are viable actions against a corporation, why should these actions not be viable against an individual? Why, in order to avoid the effect of § 4.06, cannot appellants pursue their actions against Joseph and Pamela by simply contending that, "we are not suing Joseph and Pamela for alienation of affection, we are suing them for negligent interference with family relations?" Further, since alienation of affection is an intentional tort, § 4.06 should not apply to actions sounding in negligence. I would hold such to defeat the intent and purpose of § 4.06.

The logical conclusion seems to be that if the law shields the actor and perpetrator of the alienation, then the law should not hold an employer vicariously responsible for the non-actionable conduct of an employee. If the actor or perpetrator be immune under § 4.06, should not that immunity inure to the protection of those of least responsibility?

The historical, underlying, and perhaps unspoken premise, offering legal viability to an alienation of affection cause of action, was governments' efforts to structure and fashion a legal remedy which would police and punish immoral interference in and with the sanctity of marital relations.

One need but read or view daily media to conclude that deterioration of the family unit in America is a fact deserving of judicial notice. Does the answer to this heart rending social dilemma lie in the imposition of a legal duty upon the business sector of the States and the Nation to monitor the moral personal lives of employees? Does the solution to marital infidelity and family unit deterioration lie, perhaps even better, in government control of morality in the work-place?

I do not perceive appellants' respective lawsuits to be actual suits against Helena for alienating the affections of Joseph and Pamela. I perceive appellants' suits as efforts by appellants to punish Helena for its failure to intercede in private domestic matters. One can but imagine the floodgate of litigation emanating from a legal requirement which holds liable a corporation, its officers and employees, a partnership, a sole proprietorship, for failure to intervene in the personal affairs of individuals. Here, I perceive appellants' actions against Helena Laboratories Corporation as unique efforts to hold this corporation responsible and liable for failing to intervene in the personal affairs of four individuals, two of whom, may or may not have been, involved in alienating their respective paramour's affection from that respective paramour's spouse. Query: If the business sector is legally and morally responsible and obligated to monitor the personal lives of its employees, then should not government do likewise for all its citizenry?

The judgment of the trial court in granting summary judgment in favor of appellee Helena Laboratories Corporation should be affirmed. Whereas, the trial court's judgment may be unclear in that same does not clearly set forth that § 4.06 of the Texas Family Code is a bar at law to appellants' action, I would hold that appellants' alleged causes of action against appellee Helena Laboratories Corporation are indirect actions brought for the purpose of recovering money from Helena Laboratories Corporation for its failure to intervene in the private affairs of its employees, Joseph Golias and Pamela Snyder, thereby preventing the alienation of Joseph Golias from Allison N. Golias, and Pamela Snyder, from Robert Snyder.

I respectfully dissent and believe that judgment should be entered that appellants take nothing from appellee because appellants' claim is barred under § 4.06 of the Texas Family Code.