Brian BOOKER and Donna Booker, Individually and as Next Friends to Chase Booker and Avery Booker, Appellants,

v.

REAL HOMES, INC., Marvin Lumber & Cedar Company, and Marvin Windows, Inc., Appellees.

No. 04–02–00122–CV.

Court of Appeals of Texas, San Antonio.

Jan. 15, 2003.

Opinion on Denial of Rehearing Feb. 26, 2003.

Robert W. Loree, Todd Lipscomb, Loree, Hernandez & Lipscomb, PLLC, San Antonio, William J. Gamble, Torres, Gamble & Schuchart, P.C., Castroville, for appellants.

Thomas H. Boyd, Donald J. Brown, Winthrop & Weinstine, P.A., St. Paul, MN, Bret L. Walton, Werstein, Smith & Wilson, Ruth G. Malinas, David L. Hanna, Larry D. Warren, Ball & Weed, P.C., Daniel C. Andrews, Jones Kurth & Andrews, P.C., San Antonio, for appellees.

Sitting: CATHERINE M. STONE, Justice, PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice.

Opinion by PAUL W. GREEN, Justice.

This appeal arises from a construction defect case. Appellants, Brian and Donna Booker (Bookers) appeal from the trial court's order granting a partial summary judgment on limitations in favor of Appellees, Real Homes, Inc. (Real Homes) and Marvin Lumber and Cedar Company (Marvin).[1] The Bookers present this court with three issues. First, the Bookers assert the trial court erred in granting the motion for partial summary judgment because there are genuine issues of material fact with regard to the date their cause of action accrued. Second, the Bookers claim the trial court erred in granting the motion because Real Homes and Marvin failed to meet their burden of proof with regard to negating the discovery rule. Finally, the Bookers claim the trial court erred in granting the motion for partial summary judgment because the statute of limitations was tolled when the Bookers met their burden on the issues of fraudulent concealment and intentional misrepresentation.

We overrule the Bookers' first two issues. First, the Bookers failed to raise a genuine issue of material fact regarding the accrual date. Additionally, although we agree that the discovery rule applies in the case at hand, the application of the rule does not resuscitate the Bookers' cause of action. Even with the application of the discovery rule, the claim falls outside the time period prescribed by the statute of limitations. With regard to the Bookers' third issue, however, we partially affirm, overruling the summary judgment as to Real Homes under the theory of fraudulent concealment and intentional misrepresentation.

---

1. Although an additional party, Marvin Windows, Inc., was named in the suit below, they are not a party to this appeal.

## BACKGROUND

Real Homes built a house for the Bookers, installing windows manufactured and sold by Marvin. Although construction on the house continued throughout 1997, the Bookers moved into their new home in November of 1996. Due to construction defects, water began to seep into the house through and around the windows. In the summary judgment evidence presented by Real Homes and Marvin, the Bookers appear to have first experienced leakage problems with their house in September of 1997. In a letter to Real Homes, dated September 15, 1997, the Bookers list several items which need the builder's attention, including "numerous areas not caulked, allowing moisture in" and "doors and windows leaking, causing damages to door and base molding."

In their own summary judgment evidence, the Bookers iterate the chain of events surrounding the construction defects which led to the lawsuit. In November of 1997, the Bookers began to notice a "musty" odor inside their home, most prevalently in the master bedroom. They reported the odor to Real Homes which investigated in both January and April of 1998, taking no further action. In June of 1998, the Bookers sent a certified letter to Real Homes, again asking the builders to remedy the problem. In September of 1998, Real Homes removed the sheetrock in the master bedroom, uncovering water damage, including moisture and mold. Two months later, in November of 1998, Real Homes performed a water test, determining the windows were the source of the leaks. They informed the Bookers that Marvin would now be involved and the problems fixed.

Beginning in November of 1998, Real Homes, Marvin, and Marvin Windows performed repairs on the house which continued until January or February of 1999. The repair work encompassed leaks on the north wall of the Bookers' family room and the east wall of the house. The Bookers were told the problem had been fixed. The musty odor, however, returned.

In April of 1999, Donna Booker sent a letter to Real Homes, informing them of the continuing pervasiveness of the odor. Upon inspection, Real Homes told the Bookers the smell was coming from outside of the house. Real Homes did not respond to further correspondence from the Bookers.

In July of 1999, the Bookers cut a hole in the wall underneath the windows in one of their rooms. They discovered "wet and rotten" wood, as well as dampened insulation behind the wall. The seepage had apparently caused extensive water damage inside the walls of the house, and the water damage led to an eventual infestation of toxic mold. The mold, in turn, caused several health problems for the family.

On October 13, 1999, the Bookers filed suit against Real Homes and Marvin, alleging numerous causes of action, including breach of contract, breach of warranty, negligence, gross negligence, negligent misrepresentation, intentional infliction of emotional distress, and violations of the Texas Deceptive Trade Practices Act ("DTPA").

Approximately one month before the case was set to go to trial, Real Homes and Marvin moved for partial summary judgment, contending the Bookers' claims for negligence, gross negligence, negligent misrepresentation, intentional infliction of emotional distress, and violations of the DTPA were barred by the two-year statute of limitations.[2] The trial court granted

2. There is no dispute as to the applicable statute of limitations. Under the Texas Civil

the motion as to these causes of action.[3] The Bookers appeal this judgment.[4]

## STANDARD OF REVIEW

■ The standard for reviewing a summary judgment under Texas Rule of Civil Procedure 166a(c) is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). We view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *KPMG Peat Marwick*, 988 S.W.2d at 748; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

■ In a motion for summary judgment based upon a statute of limitations, the burden is on the movant to establish as a matter of law that the applicable statute of limitations bars the action. *KPMG Peat Marwick*, 988 S.W.2d at 748. The movant must conclusively establish all elements of the defense of limitations, leaving no genuine issue of material fact. *Id.; Cummings v. HCA Health Servs. of Texas, Inc.*, 799 S.W.2d 403, 405 (Tex.App.-Houston [14th Dist.] 1990, no writ). A defendant seeking summary judgment based on the statute of limitations must prove when the cause of action accrued and must negate the applicability of the discovery rule if pled by the non-movant. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Cornerstones Mun. Util. Dist. v. Monsanto Co.*, 889 S.W.2d 570, 573 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

## GENUINE ISSUE OF MATERIAL FACT REGARDING ACCRUAL DATE AND THE DISCOVERY RULE

In their first and second issues, the Bookers argue the trial court erred in granting the appellees' motion for partial summary judgment because there are genuine issues of material fact concerning the date on which their cause of action accrued under the discovery rule. The Bookers also contend that neither Real Homes nor Marvin successfully negated the application of this rule.

■ Generally, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of the injury. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). A party need only be aware of enough facts to apprize him of his right to seek judicial remedy. *See Murray v. San Jacinto Agency, ·Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). There are, however, exceptions to this rule. The discovery rule, for example, is a judicially conceived exception to the statute of limitations to be used by courts in determining when a cause of action accrues where the plaintiff is unable to know of his injury at the time it occurs. *Moreno*, 787 S.W.2d at 351. When applicable, the discovery rule tolls the running of the statute of limitations until the plaintiff discovers, or through the exercise of reason-

---

Practices and Remedies Code § 16.003(a) and the Texas Business and Commerce Code § 17.565, the applicable statute of limitations is two years.

**3.** The trial court also granted Marvin's motion for no evidence summary judgment on the cause of action for breach of the implied warranty of fitness for a particular purpose.

The Bookers, however, do not appeal that judgment.

**4.** The dismissed causes of action were severed from the remaining causes of action, and the Bookers timely filed notice of appeal. The trial judge then abated the remaining issues pending the resolution of this appeal.

able care and diligence should discover, the nature of his injury. *Moreno,* 787 S.W.2d at 351; *Cornerstones,* 889 S.W.2d at 576. The discovery rule imposes a duty on the plaintiff to exercise reasonable diligence to discover facts of negligence or omission. *Bayou Bend Towers Council of Co-Owners v. Manhattan Construction Co.,* 866 S.W.2d 740, 742–743 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

The discovery rule applies in cases where the injured party did not and could not know of its injury at the time it occurred, that is when the injury is inherently undiscoverable. *Bayou Bend,* 866 S.W.2d at 743. Limitations do not begin when the first damage is observed or when the full extent of the damage is known, but rather when the appellants knew or should have known of the facts giving rise to their cause of action. *Tenowich v. Sterling Plumbing Co., Inc.,* 712 S.W.2d 188, 189–190 (Tex.App.-Houston [14th Dist.] 1986, no writ). Although the law is clear, Texas courts have varied in their application of this law, applying the aforementioned rule and arriving at diverging conclusions.[5]

 In spite of this lack of clarity, it is evident that the statute of limitations could not begin to run until the Bookers knew or, through the exercise of reasonable care and diligence should have known,

of the facts giving rise to their cause of action. *Tenowich,* 712 S.W.2d at 189–190. Although the Bookers argue the statute was tolled until they knew of the exact cause of the leaks and not just the leaks, themselves, all that is required to commence the running of the limitations period is the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible. *See Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 344 n. 3 (Tex.1992). The Bookers, however, could not have discovered the injury or its general cause before they were aware of the actual leaks. The discovery rule, therefore, applies, tolling the running of the statute until the date on which the Bookers actually knew of the leaks.

Because the Bookers pled the discovery rule, it was the burden of Real Homes and Marvin to establish when the Bookers discovered, or should have discovered, their injury.[6] The summary judgment proof offered by Real Homes and Marvin established the Bookers were aware of leaks in the windows as early as September of 1997.[7] The Bookers' letter to Real Homes, dated September 15, 1997, established that they were cognizant of problems with the windows leaking even if they were not aware of the possible consequences or the exact cause-in-fact.[8] The Bookers' sum-

---

**5.** *See Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 121 (Tex.2001) (attorney malpractice); *Little v. Smith,* 943 S.W.2d 414 (Tex.1997) (probate); *S.V. v. R.V.,* 933 S.W.2d 1 (Tex. 1996) (child abuse); *Bayou Bend,* 866 S.W.2d at 743 (construction defects); *Buffington v. Lewis,* 834 S.W.2d 601 (Tex.App.-Houston [14th Dist.] 1992, no writ); *Tenowich,* 712 S.W.2d at 190.

**6.** Although Marvin contests the applicability of the discovery rule in its brief, Real Homes does not argue the discovery rule is inapplicable. Rather, Real Homes contends that even applying the discovery rule, the Bookers' cause of action accrued in September 1997,

meaning the statute of limitations had expired at the time the Bookers filed suit.

**7.** Although the Bookers' letter to Real Homes is the most important piece of evidence in this analysis, Marvin also presented two service request forms, dated 5–22 and 6–4–97, which mention "water infiltration problems," arguing the statute began to run from one of these earlier dates. It is not clear from the forms, however, exactly who requested the service or where the water infiltration was located.

**8.** The Bookers attempt to refute the validity of the letter by attesting that Brian Booker did not write the letter and had no knowledge of

mary judgment evidence was not sufficient to raise a genuine issue regarding the accrual date. The statute of limitations, therefore, began to run, at the latest, on September 15, 1997, the date the Bookers sent the letter complaining of leaks to Real Homes. We, therefore, overrule the Bookers' first two issues.

## TOLLING OF THE STATUTE BY FRAUDULENT CONCEALMENT AND INTENTIONAL MISREPRESENTATION

In their final issue, the Bookers claim the trial court erred in granting the appellees' motion for partial summary judgment because the statute was tolled by the fraudulent concealment and intentional misrepresentations of Real Homes and Marvin. The Bookers claim the misleading conduct of both appellees prevented them from discovering their injury. Specifically, the Bookers assert Real Homes and Marvin misrepresented the severity of the problems with the leaks by failing to reveal the content of service reports, misleading the Bookers as to the source of the odor, and downplaying the seriousness of the problems. The Bookers also contend Real Homes and Marvin misrepresented the extent of the repairs completed on the house, claiming to have fixed the leaking windows, repaired the water damage, and cleaned the mold infestation when, in reality, several of the issues had not been resolved.

■ Fraudulent concealment estops a defendant from using limitations as an affirmative defense. *Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex.1983). Because fraudulent concealment is an affirmative defense to limitations, the burden is on the

plaintiff to raise the issue. *Leeds v. Cooley,* 702 S.W.2d 213, 215 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.). Under Texas law, to show that a plaintiff is entitled to the estoppel effect of fraudulent concealment, the plaintiff must show that (1) the defendant had actual knowledge of the wrong, (2) a duty to disclose the wrong, and (3) a fixed purpose to conceal the wrong. *Savage v. Psychiatric Inst. of Bedford, Inc.,* 965 S.W.2d 745, 753 (Tex. App.-Fort Worth 1998, pet. denied).

■ Unlike the discovery rule, which determines when the limitations period begins to run, the doctrine of fraudulent concealment suspends the running of the limitations period after it has begun because the defendant concealed facts necessary for the plaintiff to know that a claim existed. *Mitchell Energy Corp. v. Bartlett,* 958 S.W.2d 430, 439 (Tex.App.-Fort Worth 1997, pet. denied). But the estoppel effect of fraudulent concealment is not permanent. Knowledge of facts that would make a reasonable person inquire and discover a concealed cause of action is equivalent to knowledge of the cause of action for limitations purposes. *See Borderlon,* 661 S.W.2d at 909; *Bayou Bend,* 866 S.W.2d at 747.

■ As to Real Homes, the summary judgment evidence shows that Real Homes visited the Booker home several times during 1997, 1998, and 1999, in an attempt to diagnose and repair the problems in the house. The evidence also shows that employees or representatives of Real Homes actually completed repair work on the house, assuring the Bookers that the leaks, water damage, and mold infestation were remedied. In addition, the Bookers' affi-

---

its delivery. Donna Booker, however, admits to having written the letter and delivered it on September 15. She claims, however, to be unsure as to whether it was September of 1997 or 1998. Because the letter is dated

1997 and because Dennis Marbach, one of the owners of Real Homes, attests to having received the letter in 1997, the Bookers have failed to raise on genuine issue of material fact regarding the letter.

**494**

davits indicate that, following the repairs, Real Homes told them the continuing musty smell was coming from outside the house and then failed to respond to several attempts by the Bookers to communicate. Finally, there is summary judgment evidence demonstrating that the Marvin Windows repairman, who reported the situation as "bad," was told by Real Homes to complete work on only two sides of the house, repairing only 26 windows and leaving the remaining two sides as they were. Real Homes then represented that the problems had been fixed and requested the Bookers to endorse a check from Marvin, paying for Real Homes' portion of the repairs.

The Bookers have raised evidence showing that Real Homes (1) had actual knowledge of the problems with the windows and the incomplete repairs; (2) a duty, as a professional builder, to disclose any wrongs which the Bookers, as laypeople, would not be able to discover on their own; and (3) a fixed purpose to conceal the wrong because it would cost the builder more money to fix the problems completely.

■ As to Marvin, even though the Bookers introduced summary judgment evidence showing that Marvin was aware of the wrongs, they have failed to introduce evidence indicating that Marvin had a duty to disclose any of these wrongs to the Bookers or that Marvin had a fixed purpose in concealing the wrongs from them. In fact, the majority of Marvin's contact with the Bookers appears to have been indirect, because they were contracted through Real Homes.

We affirm the Bookers' third issue as it applies to Real Homes, but overrule the issue as it applies to Marvin. Therefore, we affirm the summary judgment in favor of Marvin, and reverse the summary judgment in favor of Real Homes.

### OPINION ON APPELLEE REAL HOME'S MOTION FOR REHEARING

Real Home's motion for rehearing is denied. We write, however, to clarify our opinion in light of an issue raised in the motion.

The opinion refers to Real Homes' failure to disclose certain facts to the Bookers concerning the condition of their home. Real Homes argues in its motion for rehearing that it did not owe a duty to disclose to the Bookers. However, it is not the failure to disclose alone that is the basis of the Court's ruling that reverses the summary judgment as to Real Homes. Irrespective of whether Real Homes had a duty to disclose, there is summary judgment evidence that Real Homes made affirmative representations to the Bookers that their home had been repaired, which representations turned out to be false. This evidence supports the Booker's claim that limitations should be tolled due to the fraudulent conduct of Real Homes.