

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00490-CV

JIM AND REBECCA BROWN                                          APPELLANTS

V.

CALDWELL & FAMILY CUSTOM                                        APPELLEE
HOMES, INC.

----------

## FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellants Jim Brown and Rebecca Brown brought claims against appellee Caldwell & Family Custom Homes, Inc. for negligence, breach of warranty, and violation of the Deceptive Trade Practices-Consumer Protection Act (DTPA).[2]  The trial court granted summary judgment for appellee on

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Bus. & Com. Code Ann. § 17.41 (West 2011).

limitations grounds on appellants' negligence and DTPA claims.[3]  In one issue, appellants argue that the trial court erred by granting appellee's motion for summary judgment because the limitations period was tolled by application of the discovery rule.  We affirm.

## Background Facts

Appellee has been building homes throughout Carrollton, North Dallas, Plano, and Frisco since 1997.  In 2005, appellants bought a home in Carrollton that had been built by appellee in 1999 and had been lived in by previous owners.  Wade Otte delivered an inspection report to appellants prior to the purchase.  Otte's report disclosed many concerns about the home, including a negative drain angle on the front balcony and porch.  Additionally, the previous home owners informed appellants that one of the balconies had leaked and had been repaired by appellee.

After appellant Jim Brown noticed in 2007 that water was intruding on the ceiling at the front of the house, appellants hired a contractor to restructure the balconies and invited Patrick Caldwell, appellee's president, to the home to speak to the contractor.  Appellants' contractor reported that the leaks had been caused by faults in the original construction of the balconies.  Appellants and Caldwell then exchanged several letters in which appellants requested that

---

[3]The court also granted summary judgment against appellants' breach of warranty claim because the "defect was not latent."

2

Caldwell reimburse them for the cost of the repairs.[4]  They were unable to come to an agreement.

Appellants sued appellee in July 2009.  They asserted claims for negligent construction of the balconies, for breach of the warranty of good and workmanlike construction, and for violation of the DTPA.  Appellee answered the suit through a general denial and by asserting that appellants' claims were barred by a statute of limitations.  Appellee filed a motion for summary judgment on that ground, among others.  Appellants responded by asserting that the balcony flaws were latent defects and thus the discovery rule tolled the statute of limitations. The trial court granted appellee's motion for summary judgment.  As to appellants' negligence and DTPA claims, the trial court expressly determined that the claims were barred by limitations.  This appeal followed.

**Standard of Review**

We review a summary judgment de novo.  *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *20801,*

---

[4]Appellants' homeowner's insurance company declined to cover the cost of the repairs.

3

*Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

**Appellee's Statute of Limitations Affirmative Defense**

A defendant moving for summary judgment on the affirmative defense of limitations must conclusively establish that defense by (1) showing when the cause of action accrued, and (2) negating the discovery rule, if it applies and has been pled, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of the injury. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). As appellants acknowledge, the statute of limitations on DTPA and negligence claims is two years. *See* Tex. Bus. & Com. Code Ann. § 17.565 (West 2011); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2012); *KPMG Peat Marwick*, 988 S.W.2d at 749; *Zavadil v. Safeco Ins. Co. of Ill.*, 309 S.W.3d 593, 594 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

The purpose of a statute of limitations is to "compel the exercise of a right [of action] within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds." *Brinker Tex., L.P. v. Looney*, 135 S.W.3d 280, 284 (Tex. App.—

4

Fort Worth 2004, no pet.) (citing *Cont'l S. Lines, Inc. v. Hilland*, 528 S.W.2d 828, 831 (Tex. 1975)). A cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011) (op. on reh'g) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)). When a cause of action accrues is normally a question of law. *Id.*

The discovery rule is a limited exception to the general principle that a statute of limitations begins to run when an injury occurs, regardless of when the plaintiff learns of the injury. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (op. on reh'g); *Trinity River Auth. v. URS Consultants, Inc.-Tex.*, 889 S.W.2d 259, 262 (Tex. 1994); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). The discovery rule applies only when the "nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011). An injury is inherently undiscoverable if by its nature, it is "unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.*; *see Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001); *Rashti v. GS Roofing Prods., Inc.*, No. 02-03-00250-CV, 2004 WL 1879641, at *1 (Tex. App.—Fort Worth Aug. 23, 2004, no pet.) (mem. op.).

When the discovery rule applies, the period of limitations begins to run when the plaintiff actually discovers, or with the exercise of reasonable diligence

should have discovered, the nature of the injury. *Moreno*, 787 S.W.2d at 351; *Holland v. Lovelace*, 352 S.W.3d 777, 790–91 (Tex. App.—Dallas 2011, pet. denied). The plaintiff does not need to know the full extent of the injury before the statute of limitations begins to run. *Dean v. Frank W. Neal & Assocs., Inc.*, 166 S.W.3d 352, 356 (Tex. App.—Fort Worth 2005, no pet.); *see also PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004) (stating that limitations begins to run under the discovery rule even if the plaintiff does not know the specific cause of the injury, the party responsible for it, the full extent of it, or the chances of avoiding it); *Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 743 (Tex. App.—Houston [14th Dist.] 1993, writ denied) ("[A]ll that is required to commence the running of the limitations period is the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible.").

In *Dean*, the plaintiffs contracted with the defendants to build their home. 166 S.W.3d at 354. After moving into the house in 1996, the plaintiffs noticed cracks around the house and contacted the defendants to discuss possible remedies. *Id.* at 355. When the defendants refused to pay for repairs, the plaintiffs sued for negligence, breach of warranty, and violation of the DTPA, among other causes of action, in January 2002. *Id.* The trial court granted the defendants' motion for summary judgment on the ground that the plaintiffs' claims were barred by the statute of limitations. *Id.* The plaintiffs contended that they could not have discovered the full extent of the house's foundation problems

until they hired an engineer to examine the house in late 1998. *Id.* at 356. We held that the discovery rule did not toll the statute until the plaintiffs learned of the actual cause of the injury but that the limitations period instead began to run when the plaintiffs saw cracking in the house and knew of some movement in the foundation. *Id.* at 357.

Likewise, in *Booker v. Real Homes, Inc.*, the plaintiffs hired the defendant to construct their home. 103 S.W.3d 487, 490 (Tex. App.—San Antonio 2003, pet. denied). Because of construction defects, the windows in the plaintiffs' home began to leak. *Id.* One year after moving into the house, the plaintiffs wrote a letter to the defendant complaining of several issues in the home, including leaky windows. *Id.* The plaintiffs had also noticed a musty odor inside the home. *Id.* The defendant made repairs to the home but the musty smell returned. *Id.* Three years after moving into the home, the plaintiffs discovered toxic mold in the walls caused by the window leaks. *Id.* The plaintiffs filed negligence and DTPA claims more than two years after initially contacting the defendant about the leaky windows. *Id.* The plaintiffs argued that the discovery rule tolled the statute of limitations until they knew the exact cause of the leaks and that their knowledge of the leaks themselves was insufficient to begin the limitations period. *Id.* at 492. The San Antonio Court of Appeals disagreed, concluding that that "all that is required to commence the running of the limitations period is the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible." *Id.*; *see also Rashti*, 2004 WL

7

1879641, at *1–2 (holding that the limitations period began to run when a shopping center owner discovered leaks in her building and not when she discovered the specific condition that caused the leaks).

Appellants argue that their balcony leak, which caused damage to the inside of their home, was a latent defect, therefore tolling the limitations period under the discovery rule. A latent defect is one that is not discoverable by a reasonably prudent inspection. *Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168, 169 (Tex. 1983); *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 503 (Tex. App.—Houston [14th Dist.] 2007, pets. denied) (op. on reh'g). Appellants claim that they did not discover any defects until the balconies began leaking water inside their home in 2008 and, as such, the statute of limitations should be tolled until that point. But Otte's home inspection report, which he delivered to appellants in the latter part of 2005, stated in part,

> The inspection is of conditions which are present and visible at the time of the inspection. . . .
>
> This report is intended to provide you with information concerning the condition of the property at the time of the inspection. Please read the report carefully. . . .
>
> . . . .
>
> *A negative drain angle was noted at the front porch and the balcony above (porch/balcony slopes toward the house).* This is improper and *should be further investigated* by a structural engineer to determine what if any repairs should be [completed] *and by a qualified contractor to determine if any damage has occurred* prior to closing on this house. The engineer should also rule out damage to the structure of the house.

8

. . . .

> Rust was noted at the flashing to the west of the main upper level balcony door. *This appears to be one of the areas where water is holding.* This should be further investigated and repaired as needed. [Emphasis added.]

Appellants argued in the trial court that appellee had "brought forth no evidence to support its claim that [appellees were] aware of the leak any earlier than 2008." Appellant Jim Brown's affidavit states that at the time he and his wife bought the house, they were not aware of water penetration issues on the balcony. Although the inspection report did not specifically convey to appellants that the balconies leaked water into their home, it did put them on notice that the balconies had a drainage problem, and it advised them to investigate the problem and to determine if any damage had been caused by it. *Cf. Irwin v. Nortex Found. Designs, Inc.*, No. 02-08-00436-CV, 2009 WL 2462566, at *5 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.) (mem. op.) (holding that an engineering report demonstrated that the plaintiffs were on notice of their house's potential foundation problems and that the plaintiffs could have discovered the problems by exercising reasonable diligence).

In the trial court, appellants argued that the damage to the inside of their home was caused, in part, by the fact that a "rubber pan was not attached to the [balcony's] flashing[,] allowing the water to run under the flashing and into the residence." Thus, on appeal, appellants appear to contend that the inspection report, which described rusted flashing and a negative drain angle but not the

9

absence of a rubber pan, was insufficient to show that with reasonable diligence, they should have discovered the leak. But in appellants' summary judgment evidence, they conceded that the water damage in their home was at least partially caused by the negative drain angle that the inspection report warned them about, even if it was also caused by other factors. Specifically, in January 2009, in a letter to Caldwell, appellant Jim Brown stated that contractors he had hired had opined about "many issues with the original construction that [had] *caused the leaking of the balcony*," including "Slope: The large balcony sloped 1 ½ [inches] in towards the house. *This caused water to sit on the balcony and run to the back of it.*" [Emphasis added.] Regarding the rubber pan, Brown's letter to Caldwell stated, "The rubber pan was not attached in [any way] to the metal flashing . . . , *so as water would run back towards the house* it would go right under the metal flashing." [Emphasis added.]

We conclude that the combination of Otte's inspection report, which disclosed the negative drain angle and advised appellants to determine whether that condition had caused damage, and of appellants' concession that the negative drain angle partly caused the damage of which they complain, comprise conclusive evidence that with the exercise of reasonable diligence, appellants should have discovered the nature of the injury at the time that they received the report in 2005. *See Moreno*, 787 S.W.2d at 351; *Dean*, 166 S.W.3d at 357.[5]

---

[5]Because we hold that the summary judgment evidence conclusively establishes that appellants should have discovered the nature of their injury by

10

Appellants' later discovery of the issue with the flashing and the rubber pan is immaterial to whether, as a result of the report about the negative drain angle, they should have discovered the nature of their injury in 2005. *See Bayou Bend*, 866 S.W.2d at 743 (holding that the plaintiff must only discover an injury and general cause but not the exact cause in fact to commence the running of the limitations period).

Therefore, we hold that even if the discovery rule applied to the facts of this case, the two-year statute of limitations for appellants' negligence and DTPA claims began to run, at the latest, in 2005, when they received the inspection report and, with reasonable diligence, should have discovered the nature of their injury. *See Moreno*, 787 S.W.2d at 351; *Dean*, 166 S.W.3d at 357. Because appellants did not file those claims until 2009, we hold that they are barred by limitations and that the trial court did not err by granting appellee's motion for summary judgment.

Furthermore, the trial court granted summary judgment on appellants' breach of warranty claim on the ground that the defect was not latent.[6] *See*

---

exercising reasonable diligence after receiving the inspection report, we conclude that the statement in Jim Brown's affidavit that he did not actually know of water penetration issues until 2007 is immaterial. *See Moreno*, 787 S.W.2d at 351 ("When applied, the [discovery] rule operates to toll the running of the period of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury.").

[6]Although appellants' brief does not contain argument particularly related to their breach of warranty claim, we have broadly construed the brief as challenging the summary judgment on all three claims.

*Gupta*, 646 S.W.2d at 169 (stating that the implied warranty that a building constructed for residential use has been constructed in a workmanlike manner covers "latent defects not discoverable by a reasonably prudent inspection of the building at the time of sale"). For the reasons stated above, the summary judgment evidence conclusively establishes that the alleged defect in appellee's construction of appellants' home was not latent (because it was discoverable through a reasonably prudent inspection), so we hold that the trial court correctly granted summary judgment on the breach of warranty claim as well. *See id.*

For all of these reasons, we overrule appellants' sole issue.

## Conclusion

Having overruled appellants' issue, we affirm the trial court's judgment.


TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DELIVERED: October 4, 2012